IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

STEVEN TRUJILLO, )
)
    Petitioner, )
)
v. ) Case No. CIV-11-1072-F
)
HECTOR A. LEDEZMA, Warden, )
)
    Respondent. )

# REPORT AND RECOMMENDATION

Mr. Steven Trujillo was convicted of a disciplinary infraction involving possession of illicit drugs or drug paraphernalia while in prison. He has filed a petition for habeas relief, alleging bias on the part of the decision-maker, use of the incorrect burden of proof, lack of evidence regarding guilt, and wrongful termination of prison employment. The Court should deny habeas relief.[1]

---

[1] The Respondent has answered the petition on the merits and moved for summary judgment. In light of the filing of an answer on the merits, the Court need not address the summary judgment motion.

I.     The Scope of Due Process Safeguards in Disciplinary Proceedings

Each habeas claim implicates the Fourteenth Amendment Due Process Clause. Thus, the Court must determine whether a liberty interest is at stake.[2] If it does, the Court must identify the process "due" Mr. Trujillo.[3]

The first question should be answered in the affirmative, as authorities took 27 days of credits from Mr. Trujillo and extended his incarceration as a result.[4] These actions trigger a liberty interest.[5]

The existence of a liberty interest entitled Mr. Trujillo to due process in the disciplinary proceedings.[6] However, the scope of that protection is "measured by the due process clause" rather than "prison regulations."[7]

The required process is limited to five procedural guarantees. Three were expressly recognized by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974):

---

[2]    *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) ("Procedural due process is only available to plaintiffs that establish the existence of a recognized property or liberty interest." (citation omitted)).

[3]    *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (addressing "what process is due" an inmate in light of the establishment of a liberty interest).

[4]    *See* Respondent's Response to the Petition for Writ of Habeas Corpus, Attachment 2 at p. 3 (Dec. 19, 2011).

[5]    *See Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991) (stating that under "settled principle[s]," "an inmate's liberty interest in his earned good time credits cannot be denied" without the minimal safeguards under the Fourteenth Amendment's Due Process Clause).

[6]    *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[7]    *Brown v. Rios*, 196 Fed. Appx. 681, 683 (10th Cir. Sept. 18, 2006) (unpublished op.) (citations omitted).

(1) advance written notice of the disciplinary charge; (2) an opportunity, consistent with institutional safety and correctional goals, to present witnesses and documentary evidence; and (3) a written statement of the evidence relied on and the reasons for any disciplinary action. A fourth constitutional entitlement, consideration by an impartial decision-maker, was implied in *Wolff*.[8] Finally, in *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court added a fifth constitutional guarantee, stating that a disciplinary conviction must be supported by at least "some evidence."

## II.   Identification of the Improper Burden of Proof

The Petitioner argues that the hearing officer had improperly used the "greater weight of the evidence" standard.[9] According to the Petitioner, the decision-maker should have employed a higher burden, such as the "preponderance of the evidence" or "beyond a reasonable doubt" standard.[10] This argument is invalid because it assumes the existence of due process rights that would go beyond *Wolff* and reflects a misunderstanding of the "greater weight" standard.

---

[8]   *See Surprenant v. Rivas*, 424 F.3d 5, 16 (1st Cir. 2005) ("The *Wolff* Court . . . implied the obvious: that the essence of a fair hearing is an impartial decision-maker." (citation omitted)); *see also White v. Indiana Parole Board*, 266 F.3d 759, 767 (7th Cir. 2001) ("*Wolff* holds that prisoners are entitled to impartial decisionmakers" (citations omitted)); *Woodson v. Lack*, 865 F.2d 107, 109 (6th Cir. 1989) (stating that *Wolff* required "a decision by an impartial tribunal" (citation omitted)); *cf. Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) ("in order to comport with due process, . . . the decisionmaker must be impartial" (citations omitted; quoted *infra* p. 10)).

[9]   Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at pp. 4-5 (Sept. 26, 2011).

[10]   Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at pp. 4-5 (Sept. 26, 2011).

As noted above, the Supreme Court has identified the process due an inmate in disciplinary proceedings.[11] These rights do not include identification of the burden of proof.[12] Thus, courts have ordinarily rejected similar constitutional claims based on the standard imposed in the misconduct hearing.[13]

Indeed, the Petitioner has apparently misconstrued the nature of the "greater weight" standard. The courts in Oklahoma have defined the "preponderance" test as one involving the "greater weight of the evidence."[14] Indeed, in civil cases, the Oklahoma Uniform Jury

---

[11] *See supra* pp. 2-3.

[12] *See supra* pp. 2-3.

[13] *See Goff v. Dailey*, 991 F.2d 1437, 1441 (8th Cir. 1993) ("Inmates are certainly not constitutionally entitled to the level playing field created by a fully adversarial proceeding which uses a preponderance of the evidence standard." (footnote & citation omitted)); *Henderson v. United States Parole Commission*, 13 F.3d 1073, 1079 (7th Cir. 1994) (rejecting a habeas petitioner's claim that the disciplinary hearing officer had failed to require proof by the "'greater weight of the evidence'"). An isolated remark to the contrary appeared in an unpublished opinion in *Kirkland v. Provience*, 60 F.3d 837, 1995 WL 377088 (10th Cir. Feb. 2, 1995) (unpublished op.). There a habeas petitioner challenged a misconduct conviction for an escape because the state prosecutor had dropped similar charges. *See Kirkland v. Provience*, 1995 WL 377088, Westlaw op. at 8. In rejecting the habeas claim, the Tenth Circuit Court of Appeals noted that the burdens were different in disciplinary and criminal cases. *Id*. In dicta in an unpublished opinion, the appeals court stated: "A disciplinary hearing only requires that the case be proven by a preponderance of the evidence." *Id.* (citing *Superintendent v. Hill*, 472 U.S. 445 (1985)). The court cited *Superintendent v. Hill* for this proposition, but *Hill* does not bear any mention of a requirement to prove misconduct convictions by a preponderance of the evidence. *Id.*; *cf. Henderson v. United States Parole Commission*, 13 F.3d 1073, 1079 (7th Cir. 1994) ("The Supreme Court has never held that the Due Process Clause requires the [disciplinary hearing officer] to adhere to some narrowly-worded standard of evidence . . . .").

[14] *See Fields v. State*, 640 P.2d 990, 991 (Okla. Crim. App. 1982) ("A preponderance of the evidence has been defined by this Court to mean simply the greater weight of evidence." (citation omitted)); *Mack v. State*, 637 P.2d 1262, 1264 (Okla. Crim. App. 1981) ("A preponderance of the evidence has been defined by this Court to mean simply the greater weight of evidence." (citation omitted)); *see also Nutraceutical Corp. v. Eschenbach*, 459 F.3d 1033, 1040 (10th Cir. 2006) ("The

(continued...)

Instructions - Civil 3.1 uses the term "greater weight of the evidence" as a substitute for the phrase "preponderance of the evidence."[15] The commentary to the instruction explains:

> The instruction uses "greater weight of the evidence" instead of "preponderance of the evidence" to make the instruction more understandable to jurors. The words have the same meaning, and no change is intended in the standard of proof for civil cases. See Henderson v. State, 568 P.2d 297, 298 (Okla. Crim. App. 1982) ("A preponderance of the evidence has been defined by this Court to mean simply the greater weight of the evidence."); Black's Law Dictionary 1182 (6th ed. 1990).[16]

Thus, the Petitioner's argument is based on an incorrect distinction between the "greater weight" and "preponderance" standards. The two refer to the same burden under Oklahoma law.

Accordingly, the federal district court should reject Mr. Trujillo's habeas claim involving use of the incorrect burden of proof in the disciplinary hearing.

III.   The Existence of Some Evidence for the Disciplinary Conviction

Mr. Trujillo also contends that the evidence is insufficient for guilt.[17] This argument is invalid.

---

[14](...continued)
preponderance of the evidence standard requires the party with the burden of proof to support its position with the greater weight of the evidence." (footnote & citations omitted)).

[15]   Oklahoma Uniform Jury Instructions - Civil 3.1.

[16]   Oklahoma Uniform Jury Instructions - Civil 3.1 comments.

[17]   Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at pp. 2-4 (Sept. 26, 2011).

As noted above, the issue on habeas review is whether there is "some evidence" that Mr. Trujillo had possessed illicit drugs or drug paraphernalia.[18] The Supreme Court has held that this test can be satisfied even when the evidence "might be characterized as meager."[19]

There was at least "some evidence" to support the misconduct conviction, and the Court should reject the habeas claim.

The evidence before the hearing officer included statements by the foreman of the area, the reporting officer, an investigator, and Mr. Trujillo.[20]

This evidence indicated:

1. The hypodermic syringe was found in a file cabinet in a work area for inmate clerks.[21]

2. Mr. Trujillo was assigned to the file cabinet.[22]

---

[18] *See supra* pp. 2-3.

[19] In *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), the Supreme Court rejected a habeas claim involving a disciplinary conviction and explained: "Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."

[20] Respondent's Response to the Petition for Writ of Habeas Corpus, Attachment 2 at pp. 1-3, 5-6 (Dec. 19, 2011).

[21] Respondent's Response to the Petition for Writ of Habeas Corpus, Attachment 2 at pp. 3, 5-6 (Dec. 19, 2011).

[22] Respondent's Response to the Petition for Writ of Habeas Corpus, Attachment 2 at pp. 5-6 (Dec. 19, 2011).

    3.      He ordinarily kept a lock on the file cabinet, but it was unlocked when authorities found the syringe.[23]

    4.      No other inmates were allowed access to the file cabinet.[24]

    5.      The syringe was not in the cabinet when it had been searched only a few days earlier.[25]

Mr. Trujillo claims that he had shared access to the cabinet with an undefined number of "shop orderlies."[26] On this issue, the administrative record appears to involve a swearing-match. Authorities stated that the file cabinet had been assigned to Mr. Trujillo.[27] He disagreed, stating that he had "never [been] assigned the cabinet were [sic] the contraband was discovered" and that other prisoners had enjoyed access to the cabinet.[28] The conflicting information presented to the hearing officer provides "some evidence" for him to conclude that Mr. Trujillo had possessed the syringe in the file cabinet.

---

[23] Respondent's Response to the Petition for Writ of Habeas Corpus, Attachment 2 at p. 3 (Dec. 19, 2011).

[24] Respondent's Response to the Petition for Writ of Habeas Corpus, Attachment 2 at p. 6 (Dec. 19, 2011).

[25] Respondent's Response to the Petition for Writ of Habeas Corpus, Attachment 2 at pp. 1, 3 (Dec. 19, 2011).

[26] Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at p. 2 (Sept. 26, 2011).

[27] *See supra* p. 6.

[28] Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at pp. 2-4 (Sept. 26, 2011).

Other courts have held that "some evidence" existed for misconduct convictions in similar circumstances. For example, in *Mason v. Sargent*, 898 F.2d 679, 679 (8th Cir. 1990), contraband was found in an inmate's locker box and another prisoner acknowledged that he had put the items there.[29] According to the Eighth Circuit Court of Appeals, "some evidence" existed for the disciplinary decision notwithstanding the other inmate's statement that he had put the contraband in the locker box.[30] Similarly, in *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992), the Seventh Circuit Court of Appeals held that "some evidence" existed for a misconduct conviction when the habeas petitioner and three other prisoners had shared access to a cell containing contraband.

The reasoning in these decisions is persuasive. From the evidence presented, the hearing officer could reasonably have found the Petitioner responsible for the file cabinet and for keeping it locked.[31] In his brief, Mr. Trujillo states: "[T]he cabinet did not have a locking mechanism and it is perpostrous [sic] to place the burden on the petitioner of maintaining one."[32] But, as noted above, Mr. Trujillo acknowledged at the hearing that he had normally

---

[29]  *See Mason v. Sargent*, 898 F.2d 679, 679-80 (8th Cir. 1990).

[30]  *Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir. 1990); *see also Flowers v. Anderson*, 661 F.3d 977, 980-81 (8th Cir. 2011) (holding that some evidence existed for a disciplinary conviction when weapons were found in a common area in which the two habeas petitioners had shared responsibility with six other prisoners).

[31]  *See supra* pp. 6-7.

[32]  Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at p. 4 (Sept. 26, 2011).

kept the cabinet locked.[33] As a result, there was "some evidence" for the hearing officer to conclude that Mr. Trujillo had the responsibility to secure the file cabinet with a lock.

The reasonableness of this finding is fatal to the Petitioner's insistence on an opportunity for other inmates to put the hypodermic needle in the cabinet. If other inmates had used the work area and accessed the file cabinet, the hearing officer could still have regarded Mr. Trujillo as responsible for the contents. Following the reasoning in *Mason* and *Hamilton*,[34] the federal district court should conclude that some evidence existed for the disciplinary conviction even if others had used the work area and accessed the file cabinet.

Mr. Trujillo also points to a negative drug test, stating that if he had used metabolites they would have remained in his system.[35] But Mr. Trujillo was convicted of possession — not consumption. The negative drug test might conceivably have been considered "relevant" to Mr. Trujillo's profession of innocence. But, the drug test would not have vitiated the existence of "some evidence" that he had been in possession of the hypodermic needle.[36]

---

[33]   *See supra* pp. 6-7.

[34]   *See supra* p. 8.

[35]   Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at p. 3 (Sept. 26, 2011).

[36]   A similar issue arose in *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897 (5th Cir. 2000) (*per curiam*). There a prisoner was convicted of a disciplinary infraction for possession of marijuana. *See Henson v. U.S. Bureau of Prisons*, 213 F.3d at 897. The Fifth Circuit Court of Appeals concluded that there was "some evidence" for the misconduct conviction even though the prisoner had a negative urinalysis test. *Id.* at 897-99. The court explained: "Given that he was charged with possession rather than use, . . . this evidence only minimally weighed in his favor." *Id.* at 899 n.3.

The arguments about shared access and the negative drug test could bear on the question of guilt. But, the inquiry on habeas review is not whether Mr. Trujillo was "guilty." Instead, the pertinent issue is whether there was "some evidence" for the disciplinary conviction.[37] There was, and the Court should reject the habeas claim.

IV.     Bias on the Part of the Decision-Maker

Mr. Trujillo also contends that the hearing officer was biased.[38] This argument should be rejected.

As noted above, the Supreme Court in *Wolff* implied that the right to due process would be violated by bias on the part of the hearing officer.[39] Following the Supreme Court's decision in *Wolff*, the Tenth Circuit Court of Appeals has recognized that "[a]n impartial decisionmaker is a fundamental requirement of due process that is 'fully applicable' in the prison context."[40] But "'because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.'"[41]

In the habeas brief, Mr. Trujillo simply argues that:

---

[37]     *See supra* pp. 2-3.

[38]     Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at p. 5 (Sept. 26, 2011).

[39]     *See supra* pp. 2-3.

[40]     *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (citations omitted).

[41]     *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (quoting *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 518 (10th Cir. 1998)).

- the hearing officer was "a fellow employee of the officer that [had] issued the disciplinary report" and

- no objective decision-maker would have found guilt in the face of the strong evidence regarding others' access to the work area.[42]

These allegations are insufficient to overcome the presumption of honesty and integrity.

For example, the Court cannot presume bias simply from the fact that the hearing officer and reporting officer were employed by the same entity.[43]

And, the Court cannot infer bias simply from Mr. Trujillo's protestations that others had shared access to the work area. As discussed above, the hearing officer could objectively have concluded from the evidence that Mr. Trujillo was responsible for the contents of the file cabinet and that he had ordinarily kept a lock on the cabinet.[44] Thus, the Court should reject Mr. Trujillo's allegations of bias based on the existence of a common employer and high inmate traffic in the work area.

V.  Termination of Prison Employment

In his petition and brief, Mr. Trujillo seeks:

---

[42] Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at p. 5 (Sept. 26, 2011).

[43] In prison disciplinary proceedings, the hearing officers are typically employees of the prison. *See White v. Indiana Parole Board*, 266 F.3d 759, 767 (7th Cir. 2001) ("Disciplinary boards are made up of prison employees . . . ."). The Fourteenth Amendment Due Process Clause has never been interpreted to require use of outsiders to preside over these proceedings. *See id.* ("it is clear from *Wolff* that the Constitution does not require prisons to import professional decisionmakers such as administrative law judges to run the disciplinary process"); *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (stating that in an inmate's disciplinary proceeding, "the independent hearing officer need not come from outside the prison" (citations omitted)).

[44] *See supra* pp. 6-9.

- writs of habeas corpus and mandamus related to the disciplinary conviction,
- compensation, and
- reinstatement of his job.[45]

The requests should be declined in the form of either habeas or mandamus relief.

For purposes of habeas relief, the claim is facially invalid because the loss of prison pay is not cognizable in habeas proceedings[46] and Mr. Trujillo lacked a constitutionally protected interest in his job.[47]

The request for mandamus relief was not properly asserted, as it was buried in the body and conclusion of the habeas petition.[48] Even if the Petitioner could seek a writ of mandamus in connection with habeas proceedings, he has not filed a separate petition for this remedy. The omission is significant because the request for mandamus represents a separate form of relief and "would itself be a 'civil action'" for purposes of the Prison Litigation

---

[45] Form to Be Used by Federal Prisoner in Filing a Petition for Writ of Habeas Corpus Under 28 U.S.C. §2241 at p. 5 (Sept. 26, 2011); Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at pp. 7-8 (Sept. 26, 2011).

[46] *See Hill v. Gallegos*, 133 Fed. Appx. 511, 512 (10th Cir. May 27, 2005) (unpublished op.) (holding that habeas proceedings could not be used to challenge removal from a UNICOR prison work position because it did not involve the fact or duration of confinement).

[47] *See Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (holding that denial of employment opportunities for an inmate does "not create a constitutional liberty interest" even when the "prison regulations [entitle] prisoners to work").

[48] Motion for Releif [sic] Pursuant to Habeas Corpus §2241 and Memorandum of Law in Support of. at pp. 7-8 (Sept. 26, 2011).

Reform Act.[49] Characterization as a "civil action" under the Prison Litigation Reform Act could present serious disadvantages to Mr. Trujillo if he were unsuccessful in his request for mandamus relief.

For example, the filing of a separate petition for mandamus relief would require Mr. Trujillo to pay a $350.00 filing fee.[50] Because he filed the action as one for habeas relief, he was only required to pay a filing fee of $5.00.[51]

The difference could also impede future efforts to obtain leave to proceed *in forma pauperis*. In a habeas petition, like the one filed by Mr. Trujillo, dismissal would not pose such a problem.[52] However, in other civil actions, a "three strikes" rule is applicable.[53] Under this rule, three or more dismissals for frivolousness, maliciousness, or failure to state a valid claim would prevent future efforts to obtain pauper status in the absence of an imminent danger of serious physical injury.[54] Because mandamus involves a "civil action,"

---

[49] *In re Grant*, 635 F.3d 1227, 1230 (D.C. Cir. 2011) (citation omitted).

[50] *See* 28 U.S.C. § 1914(a) (2006); *see also In re Grant*, 635 F.3d 1227, 1230-32 (D.C. Cir. 2011) (holding that prisoners must pay the entire filing fee in mandamus actions under the Prison Litigation Reform Act).

[51] *See* 28 U.S.C. § 1914(a) (2006).

[52] *See Jennings v. Natrona County Detention Center Medical Facility*, 175 F.3d 775, 779 (10th Cir. 1999) (holding that dismissal of a habeas petition does not count as a "strike" under the Prison Litigation Reform Act).

[53] *See* 28 U.S.C. § 1915(g) (2006).

[54] 28 U.S.C. § 1915(g) (2006).

the "three strikes" rule could apply if the Court were to construe the petition as one for mandamus relief.[55]

The Petitioner was able to avoid the disadvantages of an unsuccessful mandamus petition by including the application within the body and conclusion of a brief devoted to an entirely separate type of writ — a writ of habeas corpus. Thus, the Court should decline consideration of the request for mandamus relief without a separately filed document. However, the Court should give the Petitioner 21 days to file a separate petition for a writ of mandamus if he wants to pursue this form of relief with the knowledge that: (1) he would be required to pay the filing fee of $350.00 because a mandamus action involves a non-habeas "civil action" for purposes of 28 U.S.C. § 1914(a) and § 1915(b)(1); and (2) dismissal of the mandamus petition for frivolousness, maliciousness, or failure to state a valid claim could impede future efforts to obtain pauper status in civil actions under 28 U.S.C. § 1915(g).[56]

---

[55] *See In re Kissi*, 652 F.3d 39, 40 (D.C. Cir. 2011) (*per curiam*) (holding that the three strikes rule "applies to a mandamus petition in an underlying civil case"); *In re Jacobs*, 213 F.3d 289, 291 (5th Cir. 2000) (*per curiam*) (holding "that, if a mandamus petition arising from an underlying civil case is dismissed as frivolous, that dismissal counts as a 'strike' for purposes of § 1915(g)"); *see also Fay v. United States*, 389 Fed. Appx. 802, 803-804 (10th Cir. July 29, 2010) (unpublished op.) (holding that dismissal of a mandamus petition and an appeal, based on frivolousness, had resulted in "two strikes" against the petitioner under the Prison Litigation Reform Act).

[56] *See supra* pp. 13-14.

VI. Recommended Ruling

The Court should deny the habeas petition. However, Mr. Trujillo should be given 21 days to file a separate petition for a writ of mandamus if he wishes to pursue this form of relief.

VII. Notice of the Right to Object

Mr. Trujillo may file a written objection to this report and recommendation.[57] Any such objection must be filed with the Clerk of the United States District Court, Western District of Oklahoma. The deadline for objections is April 26, 2012.[58] A failure to timely object would result in waiver of the right to appeal the suggested ruling.[59]

VIII. Status of the Referral

The referral is discharged.

Entered this 9th day of April, 2012.

*Robert E. Bacharach*
Robert E. Bacharach
United States Magistrate Judge

---

[57] *See* 28 U.S.C.A. § 636(b)(1) (2011 supp.).

[58] *See* 28 U.S.C.A. § 636(b)(1) (2011 supp.); Fed. R. Civ. P. 6(d), 72(b)(2).

[59] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).